| UNITED STATES DISTRICT COURT | FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

UNITED STATES OF AMERICA,

    -versus-

MATTHEW HUNG LEE,

           Defendant.

MEMORANDUM OF DECISION
13-CR-108 (JG)

JOHN GLEESON, United States District Judge

Defendant Matthew Hung Lee moved this Court to amend or modify his conditions of pre-trial release pursuant to 18 U.S.C. § 3145(b).[1] Lee challenges the condition of release requiring him to (1) "undergo mental health evaluation and/or treatment specific to the offense charged;" and (2) sign a waiver of confidentiality with respect to the substance of his disclosures in treatment. Release Order ¶ 13; U.S. Pretrial Services Auth. To Release Confidential Info. ("Waiver"), Def. Ex. B., ECF No. 12. On July 3, 2013, I orally granted the motion, permitting Lee to revoke the waiver of confidentiality. This memorandum explains the basis for this decision.[2]

BACKGROUND

A. *Procedural History*

On January 25, 2013, Lee was arrested and charged with four counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Magistrate Judge Viktor Pohorelsky released Lee on a series of conditions recommended by Pretrial Services, including home

---

[1] 18 U.S.C. § 3145(b), which authorizes review of a release order made by a magistrate judge, provides as follows, "If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." The district judge must "fully review[] the bail determination to reach an independent conclusion." *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (citations omitted).

[2] This Memorandum of Decision supersedes the agreement entered into the parties and memorialized in an April 9, 2013 order of this Court.

confinement, electronic monitoring, and a ban on both computer and Internet use.³ The court set

the bond at $200,000, and it was secured by the home where Lee lives with his parents.

Pretrial Services directed that Lee receive evaluation and treatment "specific to the offense charged" at New York Center for Neuropsychology and Forensic Behavioral Science ("New York Forensics"). To ensure compliance with the condition, Pretrial Services required that Lee sign a waiver of confidentiality and, in turn, directed New York Forensics to provide Monthly Treatment Reports to Pretrial Services. *See* Tr. at 12, April 9, 2013. The scope of the waiver was not limited to the fact that Lee was attending the program and complying with his treatment; rather it extended to the contents of test results and evaluations as well as any diagnoses. Specifically, the waiver required disclosure of the following information:

> [D]ate of entrance to program; attendance records; drug detection test results; type, frequency, and effectiveness of therapy; general adjustment to program rules; type and dosage of medication; response

---

³ Magistrate Judge Pohorelsky imposed the following conditions of release:
- The defendant is placed under the supervision of the U.S. Pretrial Services Agency. The defendant must report to the U.S. Pretrial Services Agency as directed and is subject to random visits by a U.S. Pretrial Services officer at his residence and place of work, if applicable.
- Travel is restricted to New York City.
- The defendant is subject to home detention with location monitoring . . . .
- [The defendant is] [s]ubject to random drug testing and treatment deemed appropriate by Pretrial Services
- The defendant shall not have any contact or association with any individual under the age of 18, except his 17 year old brother or when the minor is in the presence of another adult who is the parent or legal guardian of the minor. The defendant may not communicate with any individual under the age of 18 in writing, over the telephone or via any electronic means.
- The defendant shall avoid areas frequented by minors under the age of 18, including school yards, parks, playgrounds, fast food restaurants near schools and arcades.
- The defendants must avoid all contact, direct or indirect, with any person who is or who may become a victim or potential witness in the subject investigation or prosecution.
- The defendant must maintain residence at [his address in Brooklyn, NY] and not relocate without the approval of Pretrial Services.
- The defendants may not possess a firearm, destructive device, or other dangerous weapons.
- The defendant must undergo a mental health evaluation and/or treatment specific to the offense charged, as directed by the U.S. Pretrial Services Agency. . . .
- The defendant may not use a computer and/or access the Internet except as may be necessary for school or work purposes only.
- The U.S. Pretrial Services Agency may inspect any computer or devices with Internet access belonging to the defendant or located within his residence, and install computer monitoring software as deemed appropriate . . . .

> to treatment; test results (e.g., psychological, psychophysiological measurements, vocational, sex offense specific evaluations); date of and reason for withdrawal or termination from program; diagnosis; and prognosis.

After a few weeks of supervision, Lee moved this Court to amend his conditions of release. Specifically, he sought permission to revoke the portion of the waiver requiring New York Forensics to disclose to Pretrial Services information bearing on the "type, frequency, and effectiveness of therapy, response to treatment; test results (e.g., psychological, psychophysiological measurements, [and] vocational, sex offense specific evaluations," Def.'s Mot. to Modify Conditions of Release at 2-3, ECF No. 12.[4] He argued that this limited revocation will permit him to "fully participate in therapy, without fear that his answers will be used against him" in violation of his Fifth and Sixth Amendment rights. *Id*. at 3.

The government opposed Lee's motion. It did not dispute that Lee's court-mandated treatment provider asks him questions about his "past sexual conduct . . . [and] his involvement with pornography,"[5] and it acknowledged that the information Lee discloses in treatment will be turned over to the Probation Department and included in Lee's Pre-Sentence Report ("PSR").[6] The government further acknowledged that this information could increase Lee's advisory Guidelines range and otherwise be considered by this Court at sentencing.[7] Nonetheless, the government insists that, as a condition of his release, Lee must waive any right to confidentiality with respect to "information gleaned from New York Forensics' prognostic and diagnostic reports," Gov't Resp. 6, April 1, 2013, ECF No. 14. It argued that Lee's bond ought

---

[4] Lee did not object to a waiver of confidentiality with respect to the "date of entrance to program; general adjustment to program rules; drug detection test results; attendance records; type and dosage of medication; and date of and reason for withdrawal or termination from program."

[5] *See* Def.'s Mot. to Modify Conditions of Release 2, ECF No. 12.

[6] New York Forensics' services are governed by a Statement of Work ("SOW") issued by the Administrative Office of the U.S. Courts. According to excerpts from the SOW, a sex-offense evaluation includes a "written clinical evaluation of a defendant's/offender's risk for re-offending," SOW, Gov't Ex. 3, at C 43, ECF No. 14. Sex-offense treatment "help[s] sex offenders accept responsibility" *id*. at C 45-46, and "shall be designed to . . . [r]equire offenders to complete a full sex history." *Id*. at C 47.

[7] The directive that Lee receive treatment "specific to the offense charged" ensures that he will be asked questions about conduct that is "relevant" to sentencing.

3

to be revoked if he refuses to sign the confidentiality waiver. Tr. at 25, April 8, 2013.[8] I scheduled oral argument to consider these important issues.

1. *The April 8, 2013 Argument*

At oral argument on April 8, 2013, I expressed my belief that it would be beneficial to both Lee and the public if he is permitted to fully participate in treatment rather than invoke his right to remain silent, as the government proposed. I encouraged the parties to seek a consensual resolution that would address Lee's self-incrimination concerns while also permitting Pretrial Services to monitor its contract with New York Forensics. After some discussion, the parties agreed at the Court's urging to a limited revocation of the waiver of confidentiality. I concluded that such an agreement would not endanger the safety of Pretrial Services personnel or the community, *see* 18 U.S.C. § 3142(c)(1), and memorialized the agreement as follows:

> Lee may revoke the portion of his confidentiality waiver that permits his treatment providers to disclose the 'type, frequency, and effectiveness of therapy, response to treatment; test results (e.g., psychological, psychophysiological measurements, [and] vocational, sex offense specific evaluations' As agreed at oral argument, this revocation does not extend to any information bearing on Lee's compliance with bond and release conditions or the safety of Pretrial Services personnel and the community.

Order, April 9, 2013, ECF No. 16.

2. *Pretrial Services Expresses Difficulty in Complying with the Order*

The voluntary agreement between the parties was short-lived. Pretrial Services expressed its concern that the truncated scope of the confidentiality waiver would prevent it from monitoring its contract with New York Forensics. To include Pretrial Services in the conversation and to explore the concerns, I held a status conference on May 1, 2013.

3. *The May 1, 2013 Status Conference*

---

[8] In response to Lee's argument about his Fifth Amendment right not to be compelled to provide incriminating information, the government responded that Lee remains free not to answer the questions posed to him in treatment. Gov't Resp. at 6; *see also* Tr. at 26, April 8, 2013 ([t]he defendant has been so advised [that his statements in treatment may lengthen his sentence] . . . and . . . he has a right not to answer any questions."). However, the government later revised its position, asserting that Lee's refusal to answer questions posed during treatment could be a basis for the government to move to revoke his pretrial release for non-compliance with treatment. *See* Tr. at 17-19, July 3, 2013.

4

At the status conference, Pretrial Services reiterated its concern that a limited confidentiality waiver would prevent it from managing its contract with New York Forensics. *See* Tr. 4:18-19, May 1, 2013. It also insisted that it is obliged to disclose all information it receives to "probation officers for the purpose of compiling presentence reports." 18 U.S.C. 3153(c)(2)(C); *see also* Tr. 15:14-18 (indicating that "it is preferable for pretrial services to continue the flow of information as we do now, you know, in every case as opposed to limiting that and ignoring the regulations that we're mandated to follow.").

The government agreed that all information Pretrial Services receives must be disclosed to the Department of Probation for purposes of preparing a PSR,[9] and declined to consent to any limits on Probation's access to information obtained by Pretrial Services in the course of Lee's supervision. To accommodate Lee's concerns, the government suggested that, if Lee is convicted, I should disregard any information in the PSR derived from Lee's participation in treatment. Tr. at 8:2-7. Lee objected to this suggestion, contending that, once Probation and the Court have access to the content of his discussions with his treatment provider, any inculpatory or unfavorable information "would filter into the probation officer's recommendation," and would affect any recommendation as to a final sentence. *Id.* at 8:14.

In light of the importance of the issues at stake, I requested additional briefing on the "relative merits of having a complete barrier between pretrial and probation as opposed to a porous barrier." *Id.* at 14:20-25.

4. *The Position of the Parties After Supplemental Briefing*

In his supplemental brief to this Court, Lee seeks two forms of relief. First, he requests that the full confidentiality waiver be restored and that this Court "direct Pretrial Services not to disclose diagnostic portions of Mr. Lee's mental health records to the Probation

---

[9] Although information obtained by Pretrial Services generally is confidential, a statutory exception permits Pretrial Services to make all information it receives available to "probation officers for the purpose of compiling presentence reports." 18 U.S.C. § 3153(c)(1); *see also* Pl. Ex. A, 8A Guide to Judiciary Policy, Appx 5A: Confidentiality Regulations at 5, ECF No. 12.

5

Department." Def. Letter Br., May 10, 2013, ECF No. 21. In support of this request, Lee contends that this Court has inherent power to limit Pretrial Services from disclosing information to Probation. Second, and in the alternative, Lee requests that "the Court should adhere to its earlier ruling allowing Mr. Lee to limit disclosure from his mental health care provider to Pretrial Services." *Id*.[10]

The government continues to oppose any effort to limit the information exchanged between Pretrial and Probation, pointing out that the porous barrier between them is mandated by statute. *See* Gov't Letter Br. 4, May 17, 2013, ECF No. 22 ("Pursuant to 18 U.S.C. §§ 3153 and 3154 and regulations promulgated by the Administrative Office of the United States Courts ("AO"), Pretrial Services *must receive* the information and provide it to Probation.") (emphasis added). It suggests that Lee comply with his conditions of release as directed or risk having his bond revoked.

5. *The July 9, 2013 Oral Argument and Oral Decision*

I held oral argument on the motion on July 9, 2013. As I explained orally, this dispute must be resolved by reference to the Bail Reform Act. Because I concluded that requiring Lee to disclose the contents of his conversations with his treatment providers is broader than necessary to comply with the Act, Lee's motion to revoke a portion of his confidentiality waiver was granted.

DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, authorizes federal courts to place restraints on a defendant's liberty while criminal charges are pending. All questions with respect to Lee's release must be examined under this statutory rubric. Though all federal defendants are presumed innocent, courts are authorized to detain a defendant prior to trial if, after

---

[10] Lee also argues for the first time that Pretrial Services' confidentiality wavier violates state law and the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), Pub. L. 104–191, 110 Stat. 1936, enacted August 21, 1996 and, accordingly, he has the right to revoke the waiver entirely. Def. Letter Br. 4-8. Because I conclude the waiver is broader than necessary to comply with the Bail Reform Act, I need not consider this argument and decline to do so.

a hearing, a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Where, as here, the defendant is released pending trial, the court has a duty to select the "*least restrictive* further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (emphasis added); *see also United States v. Salerno*, 481 U.S. 739, 750-51 (1987) (upholding the constitutionality of a bail system where pretrial defendants could be detained only if the need to detain them was demonstrated on an individualized basis).[11]

In making an individualized bail determination, courts may consider many factors, including the nature and circumstances of the offense; the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g). The limited question before me now is whether requiring Lee to sign the broad waiver of confidentiality – thereby permitting Pretrial Services to know a wide range of information about his disclosures to New York Forensics – is the least restrictive condition necessary to reasonably assure the safety of any other person and the community. *Id.* § 3142(c)(1)(B).

The government has not persuaded me that the disclosure of what transpires in Lee's treatment and evaluation sessions is necessary to assure the safety of the community. When pushed to explain the reason for this condition of release, the government repeatedly stated that this is a "standard" condition. Tr. at 15, April 9, 2013 ("[T]he standard conditions in the Eastern District of New York for sex offenders do include mental health treatment and evaluation specific to the offense charged."); Tr. at 7, July 3, 2013 ("[M]y understanding is that this is a standard condition in this district.")). However, conditions of release must be imposed on an

---

[11] The Adam Walsh Act amended the Bail Reform Act of 1984, 18 U.S.C. § 3142, to require that defendants charged with certain listed crimes be placed on a prescribed minimum set of release conditions. As the government concedes, the condition of release at issue in this motion is not required by the Adam Walsh Act.

7

individualized basis, and must not be broader than necessary in light of the circumstances of the individual defendant.

The government suggested that the waiver is necessary to prevent future harm, but it has offered no evidence that Lee himself presents a threat. Instead, the government contends that if Lee "were to reveal information [in treatment] that could be a potential harm to the community[,] that's something that Pretrial Services would need to know about," Tr., April 9, 2013, at 7:6-12. However, speculation about the possibility that Lee might disclose information during treatment that suggests he poses a threat is no substitute for evidence that he poses one now. And the government's willingness to allow Lee to remain at liberty even if he asserts his Fifth Amendment privilege when asked questions in treatment undermines the suggestion that it (or Pretrial) needs to know what Lee is telling his therapist.

Considering the issue *de novo*, I found that it is not necessary to the safety of Lee, any person, or the community to require Lee to consent to disclose "drug detection test results; type, frequency, and effectiveness of therapy; general adjustment to program rules; type and dosage of medication; response to treatment; test results (e.g., psychological, psychophysiological measurements, vocational, sex offense specific evaluations); reason for withdrawal; diagnosis; or prognosis."[12] Accordingly, the portion of the waiver requiring Lee's consent to such a disclosure was revoked. In reaching this conclusion, I considered a variety of factors, including that this is Lee's first offense; that Lee has complied with all conditions of pretrial release; that Lee is subject to electronic monitoring; that Pretrial Services and the government consented to loosen Lee's conditions of release in May 2013 to permit him to work outside of the home; the other conditions of release;[13] and the fact that New York state law imposes an independent duty on Lee's mental

---

[12] Lee must sign a waiver authorizing New York Forensics to disclose to Pretrial Services his "date of entrance into the program, attendance records, and date of termination from the program."

[13] Other conditions of release – not challenged here – further ensure the safety of the community, including the conditions that Lee "shall not have contact . . . with any individual under the age of 18;" that he "shall avoid areas frequented by children;" that he "not use a computer and/or access the internet;" that he reside with his parents; and that he is subject to restricted movements outside his home.

health providers to warn the public if Lee presents a danger to the community, *see* N.Y. Mental Hygiene Law §9.46.[14]

    So ordered.

                                                        John Gleeson, U.S.D.J.

Dated:  September 20, 2013
         Brooklyn, New York

---

[14] N.Y. Mental Hygiene Law provides, *inter alia*:
Notwithstanding any other law to the contrary, when a mental health professional currently providing treatment services to a person determines, in the exercise of reasonable professional judgment, that such person is likely to engage in conduct that would result in serious harm to self or others, he or she shall be required to report, as soon as practicable, to the director of community services, or the director's designee, who shall report to the division of criminal justice services whenever he or she agrees that the person is likely to engage in such conduct.
N.Y. Mental Hygiene Law §9.46(b).